IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO.: 1:09cr9-SPM

WILLIAM DIAZ,

      Defendant.
_____/

## ORDER DENYING MOTION TO SUPPRESS

This cause came before the Court on Defendant William Diaz's Motion to Suppress Tangible Evidence, Statements, Admissions, and/or Confessions, Request for Franks Hearing, and Memorandum of Law in Support Thereof. Doc. 35. The Government filed a response in opposition. Doc. 36. A hearing was held on June 15, 2009, and resumed on August 28, 2009. The parties were given the opportunity to file supplemental arguments in writing, which Defendant has done (doc. 50). For the following reasons, Defendant's motion will be denied.

**Background**

Defendant William Diaz is charged in a three-count indictment with conspiracy (Count I), manufacturing and possessing with intent to manufacture and distribute more than 100 marijuana plants (Count II), and possession of a

firearm by a convicted felon (Count III).  The charges were filed after officers with the Drug Enforcement Administration and the local task force found Defendant emerging from a concealed hatch in his barn floor, beneath which he had an underground marijuana grow operation.

On January 26, 2009, Officers Wolfe and Devinny drove down a public roadway through an open driveway to conduct a "knock and talk" interview with Defendant.  Defendant's property consists of 50 acres of land on adjoining parcels in a rural area of Levy County, Florida.  The property has two residences and two barns.  Defendant lived at the 14150 NE 40th Street parcel.  He grew marijuana in an area under the barn at the adjoining parcel, 3651 NE 140th Avenue.

Officers Wolfe and Devinny entered the 40th Street parcel and drove along a path to the barn on the 140th Avenue parcel.  According to the officers, they headed toward the barn to seek Defendant out because a truck that had been parked at the 40th street residence had recently been moved to the barn.  While standing at the barn, the officers saw Defendant emerge from a hidden hatch in the floor.

Officer Wolfe drew his weapon, handcuffed Defendant, and advised him that he was being detained, but that he was not under arrest.  Defendant responded, "But you're going to arrest me, there's a lot of marijuana down there."  Defendant was read his Miranda warnings.  He advised that there were no booby

traps, and the officers conducted a sweep of the underground room where Defendant had emerged. Defendant signed a written waiver form agreeing to cooperate with law enforcement officers. and consented to a search of both parcels. He gave incriminating statements about his knowledge and role in a conspiracy to distribute marijuana. Although Defendant was cooperating and consented to a search, law enforcement officers obtained warrants to search both parcels.

In the motion to suppress, Defendant contends that the officers exceeded the lawful purpose of their entry when they sought him out at the barn instead of going to the residence. Defendant contends that the statements he made were given in violation of his Miranda protections and that his cooperation with law enforcement was involuntary. Defendant also argues that the search warrant is invalid because it contains material omissions.

**Discussion**

**1. entry**

The Court credits as true Officer Wolfe's testimony that he and Officer Devinny[1] entered the property through an open gate and drove unobstructed to

---

[1] Officer Devinny did not testify at the suppression hearings. Officer Wolfe's testimony was corroborated by Agent Andrews' testimony, which the Court also credits as true. Agent Andrews met with Officers Devinny and Wolfe to plan the knock and talk, and maintained a position outside the 140th Avenue property until he was called in by Officer Wolfe.

the barn to look for Defendant.  Their entry onto Defendant's property was lawful.

Defendant bears the initial burden of showing that the officers violated his legitimate expectation of privacy.  United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008).  If Defendant does so, the burden falls upon the Government to show that an exception to the warrant requirement applies.  Id.  In this case, Defendant has failed to meet his initial burden because the officers limited their movements to areas impliedly open to the public where they could be expected to find Defendant.

It is well-established that "[t]he Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises."  United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006).  "'[O]fficers are allowed to knock on a residence's door or otherwise approach a residence seeking to speak to the inhabitants just as any private citizen may.'"  Id. quoting Estate of Smith v. Marasco, 318 F.3d 497, 519 (3d Cir. 2003).  Their approach is not restricted to the front door.  If it appears that someone is in or around a house, officers may take reasonable steps to initiate contact by going to other areas of the property.  Taylor, 458 F.3d at 1204-05 (officers could move away from front door to talk to person coming from barn); Hardesty v. Hamburg Twp., 461 F.3d 646, 654 (6th Cir. 2006) (officers could go to back yard or back door to speak to occupant believed to be home).

In this case, the officers saw Defendant's truck at the 40th Street residence. Before they began their approach to the residence, the truck moved to the barn on the 140th Avenue parcel. Instead of driving to the residence to make contact with Defendant as originally planned, the officers drove to the barn. The path the officers took was not obstructed by fencing or privacy barriers. Although the barn was on a separate parcel of property, Defendant used both parcels together and had taken down portions of the fencing that separated the two parcels. The area where the officers traveled were impliedly open to the public from their entry through the open gate at the 40th Street driveway. Accordingly, the Court finds that the officers' entry onto the property and approach to the barn was lawful.

2.   statements

While Officers Wolfe and Devinny were at the barn, Defendant emerged from a concealed hatch in the floor, startling Officer Wolfe.[2] Officer Wolfe drew

---

[2] In his supplemental memorandum, Defendant complains about Officer Wolfe's entry into the barn. The Court credits as true Officer Wolfe's testimony that both of the large sliding doors to the barn were open, thus allowing him to see clear through the barn and into the interior of it. Officer Wolfe testified that he walked through the barn and called out, but no one answered. He stated that when he saw Defendant, he was just inside the sliding barn door. The Court recognizes that a reasonable expectation of privacy generally exists as to outbuildings. See United States v. Trickey, 711 F.2d 56 (6th Cir. 1983) (reasonable expectation of privacy for closed outbuilding located outside the curtilage); Allinder v. State of Ohio, 808 F.2d 1180, 1185-86 (6th Cir. 1987) (explaining that the open fields doctrine has not been applied to allow a search of personal effects or of a commercial structure; and that a distinction exists

his weapon and ordered Defendant to keep his hands up where they could be seen and to come out from the underground area. Officer Wolfe secured Defendant with handcuffs and told him that he was not under arrest but being detained until he could determine what was going on. Defendant responded, "But you're going to arrest me, there's a lot of marijuana down there." Defendant's statement was unsolicited and freely made prior to interrogation, and thus not covered under Miranda. United States v. Savell, 546 F.2d 43, 46 (5th Cir. 1977); Cannady v. Dugger, 931 F.2d 752 (11th Cir. 1991).

Soon thereafter, Officer Devinny read Defendant his Miranda warnings. Defendant continued to cooperate thereafter. Aside from Officer Wolfe drawing his weapon to secure Defendant when he emerged from the underground area in the barn, there is no indication that the officers continued to hold Defendant with their weapons or engaged in other objectively coercive behavior. Defendant states in his motion that he has a limited education and that English is his second language, but there is no specific allegation that Defendant did not understand what he was doing when he began cooperating with law enforcement. Defendant's own testimony demonstrates that he understands

---

between observations into an outbuilding from a vantage point in an open field, and entry into the outbuilding). However, because both of the large sliding doors of the barn were open, Defendant did not have an objective expectation of privacy that was violated when Officer Wolfe walked through the barn and when he stood just inside of the open barn door.

CASE NO.: 1:09cr9-SPM

English well, and that he is intelligent. The Court finds that Defendant waived his rights voluntarily, knowingly, and intelligently, when he chose to speak with the officers.

### 3. Franks challenge to warrant

To prevail on his Franks challenge, Defendant must show two things: first that misstatements or omission in the probable cause affidavit were intentional or reckless; and second that they were material to a proper determination of probable cause. United.States v. Burston, 159 F.3d 1328, 1333 (11th Cir. 1998).

Defendant complains about the failure to include in the probable cause affidavit information from a confidential source and the identity of the confidential source. Defendant also complains about a previous burglary of his home and the failure to include this in the probable cause affidavit.

Defendant has not demonstrated that the officer seeking the warrant was aware of the burglary, let alone made an intentional or reckless omission. With regard to any confidential source, Defendant has not demonstrated how including the information about the confidential source would detract from the probable cause to search. Probable cause existed based on the sweep of the underground grow rooms and Defendant's own statements to the officers prior to the execution of the search warrant.

### Conclusion

No basis exists to suppress the statements made by Defendant on

January 26, 2009, or the evidence discovered as a result of the search.

Accordingly, it is

ORDERED AND ADJUDGED: William Diaz's Motion to Suppress (doc. 35) is denied.

DONE AND ORDERED this 30th day of October, 2009.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge